IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BENJAMIN M. GAMORAN, derivatively on behalf of the nominal defendant with respect to its series mutual fund, the Neuberger Berman International Fund,<br><br>Plaintiff,<br><br>- against -<br><br>NEUBERGER BERMAN, LLC, NEUBERGER BERMAN MANAGEMENT LLC, BENJAMIN SEGAL, PETER E. SUNDMAN, JACK L. RIVKIN, JOHN CANNON, FAITH COLISH, MARTHA C. GOSS, C. ANNE HARVEY, ROBERT A. KAVESH, HOWARD A. MILEAF, EDWARD I. O'BRIEN, WILLIAM E. RULON, CORNELIUS T. RYAN, TOM D. SEIP, CANDACE L. STRAIGHT, AND PETER P. TRAPP,<br><br>Defendants,<br><br>- and -<br><br>NEUBERGER BERMAN EQUITY FUNDS d/b/a NEUBERGER BERMAN INTERNATIONAL FUND,<br><br>Nominal Defendant. | Civil Action No.:11-00751-GMS |

**DECLARATION OF THOMAS I. SHERIDAN, III IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE**

THOMAS I. SHERIDAN, III, declares under penalties of perjury:

1. Defendants' motion is similar to one made by the defendants in *Gomes v. Am. Century Cos. Inc.*, Case No. 4:10-cv-00083-SOW (W.D. Mo.), where the defendants requested the court to transfer a case like this one to the Southern District in New York, where similar litigation was pending. Judge Wright denied the defendants' motion to transfer, and the case is currently pending before him. *Id.*, Docket No. 36, at 6 & 9-12. Attached as Exhibit A is a true and correct copy of Judge Wright's decision.

1

2. On December 12, 2008, Plaintiff sued the defendants in an action arising from the same transactions and occurrences from which the present action arises. *Gamoran v. Neuberger Berman Mgmt. LLC*, 08 Civ. 10807 (DLC) ("*Gamoran I*"). The complaint in that action asserted claims under RICO as well as the state common law claims in this action. The case was assigned to Judge Cote.

3. Soon after *Gamoran I* was filed, but before the defendants had filed any responsive pleadings or a motion to dismiss, Judge Cote decided *McBrearty v. Vanguard Group, Inc.*, 2009 WL 875220 (S.D.N.Y. Apr. 2, 2009) – a case that presented legal issues similar to those asserted in *Gamoran I*, but involving different parties and different defendants who invested in different illegal gambling businesses on behalf of a different mutual fund. Judge Cote held that (i) the plaintiffs in *McBrearty* failed to adequately allege RICO causation and (ii) there was no independent basis for federal jurisdiction over the *McBrearty* plaintiffs' state claims. The Court dismissed the state claims without prejudice to re-filing in state court.

4. The *McBrearty* plaintiffs appealed, and while the appeal was pending, the parties in *Gamoran I* entered into a joint stipulation for the voluntarily dismissal of *Gamoran I* without prejudice to Plaintiff's right to commence a new action following a decision in *McBrearty*. The dismissal was the result of a joint stipulation, negotiated by the parties and approved by the Court. The terms of the stipulation make clear that Plaintiff contemplated future litigation, yet nothing in the stipulation in any way limited Plaintiff's right to commence such litigation in any appropriate forum.

5. The Second Circuit affirmed *McBrearty*. The *McBrearty* plaintiffs are now pursuing their state common law claims in the state courts of Delaware. *Hartsel v. Vanguard Group*, No. 5394-VCS, 2011 WL 2421003 (Del. Ch. June 15, 2011) (common law claims

dismissed for lack of demand on board), *appeal pending*, No. 306,2011 (Del. Sup. Ct.). Defendants incorrectly claim that the plaintiffs in *Hartsel* are different than those in *McBrearty*. In fact, they are the same. Hartsel was the second named plaintiff in *McBrearty*, and McBrearty married and changed her name to Parker.

6. On July 17, 2010 Plaintiff re-commenced his action in New York State Supreme Court. *Gamoran v. Neuberger Berman Mgmt. LLC*, Index No. 650966-10 (Sup. Ct. N.Y. County) ("*Gamoran II*"). Defendants removed the action to federal court and sought to have the case assigned to Judge Cote – who had ruled against mutual fund investors and in favor of the mutual fund fiduciaries in *McBrearty* and in *Seidl v. Am. Century Cos., Inc.* 713 F. Supp. 2d 249 (S.D.N.Y. 2010), *aff'd* 427 Fed. Appx. 35 (2d Cir. 2011) (summary order), *petition for cert. filed* Sept. 14, 2011.

7. Judge Cote rejected Defendants' request that the case be assigned to her, and it was instead randomly assigned to Judge Sand. *Gamoran v. Neuberger Berman Mgmt. LLC*, 10 CV 6234 (LBS) (S.D.N.Y. Aug. 31, 2010) Notice of Assignment, Docket No. 8. Judge Sand accepted Defendants' argument that, notwithstanding Judge Cote's ruling to the contrary in *McBrearty*, there was "federal question" jurisdiction over Plaintiff's state common law claims. *Gamoran v. Neuberger Berman Mgmt., LLC*, 10 Civ. 6234, 2010 U.S. Dist. LEXIS 119696 (S.D.N.Y. Nov. 8, 2010), *adhered to on reconsideration*, 2011 U.S. Dist. LEXIS 17939 (S.D.N.Y. Feb. 9, 2011). Plaintiff disagreed with that ruling, but he had no right to interlocutory appellate review.

8. On February 11, 2011, Plaintiff proposed to Defendants that *Gamoran II* be stayed pending a decision in *Hartsel*, since that case raised many of the same Delaware legal issues as this case. On February 16, 2011, Defendants rejected Plaintiff's proposal. Two days

3

later, on February 18, 2011, Plaintiff made a written demand on the Board of Trustees of Nominal Defendant that they cause Nominal Defendant to pursue the claims alleged in the complaint in *Gamoran II*.

9. On February 22, 2011, the Adviser Defendants moved to dismiss *Gamoran II*. Defendants did not object to Plaintiff's capacity to sue. On March 1, 2011, Plaintiff proposed to Defendants that the action be stayed pending the Board's response to Plaintiff's demand. On March 2, 2011, however, Defendants rejected Plaintiff's proposal and insisted that the case be dismissed.

10. On March 4, 2011, Trustee Defendants moved to dismiss the complaint on the ground that Plaintiff had made a demand on the Board to pursue the claims alleged in the complaint, and that the Board was considering the demand. Plaintiff requested Judge Sand to stay the case before him pending the decision by the Board. However, Defendants opposed the stay and insisted that the court dismiss the case. Apparently assuming that it was a foregone conclusion that the Board would inevitably refuse Plaintiff's demand, Defendants asked Judge Sand to require Plaintiff to commence any re-filed action in his Court. (Stone Ex. C, at p. 17) Judge Sand dismissed the case and expressly stated that "plaintiff's counsel can ... proceed as they see fit in whatever court they see fit." (*Id.* & p. 3, lines. 21-22)

11. In obtaining dismissal of *Gamoran II*, Defendants' counsel represented to Judge Sand in their papers that, in the face of an impending statute of limitations deadline, they would secure appropriate tolling agreements to protect Plaintiff's claims from unnecessary forfeiture while the Board considered Plaintiff's demand. (Tr. at 8, lines 10-14 & 9, lines 17-19) Since the time that Judge Sand dismissed *Gamoran II* in April 2011, the Board has failed to respond to Plaintiff's demand. Accordingly, Plaintiff was forced to file this case the day before the possible

expiration of the statute of limitations on some of his claims, because the Board, by its delay, had effectively abdicated responsibility for determining whether to prosecute the claims that Plaintiff demanded that it pursue. (*See* Paragraphs 121-22 of the Complaint.) Although Defendants now say – *after* this action was filed – that they have obtained tolling agreements, they have refused to honor Plaintiff's request that they disclose whether any such agreements were executed *before* this suit was commenced (and before the expiration of the limitations period), or to provide documentation to substantiate Defendants' assertion, including copies of any such agreements.

Dated: October 26, 2011

/s/ Thomas I. Sheridan, III

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of October, 2011, a copy of the foregoing Declaration was served via CM/ECF upon all counsel of record.

                                                   _____
                                                   Kevin G. Collins (No. 5149)

# **Exhibit A**

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| NELSON GOMES, Individually, derivatively and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br><br>v.<br><br>AMERICAN CENTURY COMPANIES, INC., et al.,<br><br>                      Defendants. | Case No.: 10-0083-CV-W-SOW |

## **ORDER**

Before the Court is defendants' Motion to Transfer Venue (Doc. #15). Defendants move the Court to transfer the above-captioned case to the United States District Court for the Southern District of New York. For the reasons stated below, the motion will be denied.

I. Background

Plaintiff Nelson Gomes is a shareholder in American Century World Mutual Funds, Inc. ("ACWMF") through its American Century International Discovery Fund ("the Mutual Fund"). Plaintiff filed this action against defendant American Century Companies, Inc. ("American Century"), which plaintiff alleges is an investment management company that controls the American Century mutual fund complex, including ACWMF; defendant American Century Global Investment Management, Inc. ("ACGIM"), which plaintiff alleges is a subsidiary of American Century and an investment adviser to companies controlled by American Century, including ACWMF; nominal defendant ACWMF; as well as against current and former directors of ACWMF, current and former

executives of ACWMF and American Century, and the portfolio managers of the Mutual Fund.

Plaintiff filed this lawsuit on behalf of shareholders of the Mutual Fund and against defendants for allegedly turning ACWMF into a "RICO enterprise" under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"). Plaintiff alleges that defendants, who manage the Mutual Fund, knowingly caused ACWMF to invest in two foreign internet gambling companies, BWin Interactive Entertainment AG ("BWin") and NETeller Plc ("NETeller"), which operated in violation of state and federal anti-gambling laws. Plaintiff contends these foreign internet gambling companies were "illegal gambling businesses" under RICO. Plaintiff alleges that investments in these companies suffered significant losses after the United States government began investigating the companies and arresting their principals for violating RICO.

Plaintiff further contends that because § 1955 of RICO makes it illegal to own all or part of an illegal gambling business, defendants violated RICO by knowingly investing in illegal gambling businesses by causing the Mutual Fund to purchase stock in BWin and NETeller. Plaintiff also alleges common law claims for breach of fiduciary duty, negligence, and waste.

Plaintiff first filed this case in the Eastern District of California. After defendants filed a motion to transfer venue to the Southern District of New York, plaintiff dismissed the action and refiled it in this Court.

Defendants inform the Court that plaintiff's counsel has filed several nearly identical lawsuits against American Century and other mutual fund companies around the country. Defendants contend that the lawsuits contain similar RICO allegations, but different named defendants because they involve different mutual fund companies, investment management companies, mutual funds, and underlying investments. These include the McBrearty litigation, the Gamoran litigation, and the

Seidl litigation in the Southern District of New York, as well as the Wodka litigation in the Central District of California.

Defendants point out that the Seidl litigation is a separate, but nearly identical action to the above-captioned case, brought against American Century, a defendant in this case, along with ten other defendants also named in this case. Plaintiff's counsel first brought the Seidl litigation in the Northern District of California. After venue was questioned by that court, the Seidl plaintiff dismissed and refiled it in the Southern District of New York. At the time defendants filed the present Motion to Transfer Venue in this case, the Seidl litigation was still pending in the Southern District of New York. It is no longer pending in that court. Defendants move the Court to transfer this case to the Southern District of New York.

## II. Standard

Under 28 U.S.C. § 1404(a), the Court may transfer a civil action to another district where it might have been brought if the transfer furthers the interest of justice or is more convenient for the parties or witnesses. Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997). A trial court has discretion in deciding whether to grant or to deny a change of venue. Hubbard v. White, 755 F.2d 692, 694 (8th Cir. 1985).

Courts examine three general categories of factors when deciding a motion to transfer venue under section 1404(a): (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. Terra Int'l, 119 F.3d at 691. A court's evaluation is not limited to these factors; instead, it may consider any other relevant factors and the particular circumstances of the case at hand. Id. For example, under the "balance of convenience" categories, a court may consider "(1) the convenience of the parties, (2) the convenience of the witnesses – including the willingness

of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law." Id. at 696. And under the "interest of justice" category, a court may consider "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." Id.

As the moving parties, defendants must show that the balance of these factors "strongly favors" transfer. Howard v. Judge Law Firm, No. 09-1644 (JRT/AJB), 2010 WL 2985686, at *3 (D. Minn. July 26, 2010) (citation omitted). It is important to note that section 1404(a) "provides for transfer to a *more* convenient forum, not one that is equally convenient (or inconvenient) to the forum originally selected." Advanced Logistics Consulting, Inc. v. C. Enyeart LLC, No. 09-720 (RHK/JJG), 2009 WL 1684428, at *5 (D. Minn. June 16, 2009). "Transfer should . . . be denied if the factors are evenly balanced or weigh only slightly in favor of transfer." Graff v. Qwest Commc'ns Corp., 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (citation omitted).

### III. Discussion

**A. Action Could Be Brought in the Southern District of New York**

Defendants contend that this action could have been brought in the Southern District of New York because three defendants are located in that District, including the investment management company and the portfolio managers; because defendant ACGIM, who plaintiff alleges was responsible for managing the Mutual Fund and implementing the investment strategy in question, has its principal place of business in that District; because a substantial part of the events giving rise

-4-

to plaintiff's claims occurred in that District; and because personal jurisdiction could be exercised in that District over the other defendants. Plaintiff does not dispute that this case could have been brought in the Southern District of New York.

## B. Convenience of the Parties and Witnesses

Defendants contend that the "convenience of the parties and witnesses" factors weigh in favor of transfer. The Court disagrees.

### 1. Convenience of the Parties

Here, plaintiff is a resident of California, not of Missouri. Twelve of the fifteen defendants have their principal place of business in this District, while the remaining three have their principal place of business in the Southern District of New York.

Plaintiff contends that even those defendants located in the Southern District of New York are under the control of American Century defendants located here. Defendant American Century, which plaintiff contends controls the American Century mutual fund complex, is headquartered in Kansas City. Nominal defendant ACWMF has its principal business address in Kansas City. Plaintiff contends that the primary control defendants have their principal place of business in Kansas City. Defendants contend that those defendants located in Missouri had no role in the day-to-day management of the Mutual Fund, so they were not the primary actors in plaintiff's allegations. Instead, defendants contend that the primary actors are the defendants located in New York because they bore the responsibility of developing and implementing the investment strategy complained of.

The Court finds that because the majority of defendants are located in this District, the Southern District of New York is not a more convenient venue for the parties. See Graff, 33 F. Supp. 2d at 1121 (transfer should not be used simply to shift inconvenience between parties).

### 2. Convenience of Witnesses

The parties have not pointed out any non-party witnesses located in New York or Missouri. Therefore, in terms of the convenience of non-party witnesses, the Court finds this factor is neutral. See Advanced Logistics, 2009 WL 1684428, at *5 (in considering the convenience of witnesses factor, the court looks at non-party witnesses because it is assumed that witnesses within the control of a party will voluntarily appear in a foreign forum). The Court also notes that plaintiff contends, but defendants do not dispute, that relevant documents will be located in this District. This weighs against transfer.

### 3. Location of Conduct

The parties dispute where the operative facts underlying this litigation occurred. Defendants contend that most of the primary conduct complained of occurred in the Southern District of New York because defendant ACGIM, the investment manager that managed the Mutual Fund, is based in New York. Defendants further contend American Century and the other Missouri defendants had no involvement in the day-to-day management of the Mutual Fund. Instead, defendants contend, as with most mutual funds, the investment manager (i.e. ACGIM) and its employees (i.e. the portfolio managers) are responsible for developing and implementing an investment scheme. Plaintiff contends that most of the alleged wrongdoing likely occurred in the Western District of Missouri because parent corporation American Century, which controls the other defendants, is headquartered in this District and because the majority of the alleged RICO conspirators maintain their principal place of business in this District.

Although some of the alleged wrongdoing likely occurred in New York, the Court finds this does not warrant transfer because some also occurred in Missouri. Entm't Props. Trust v. LC New

-6-

Rock LP, No. 10-0158-CV-W-ODS, 2010 WL 1658322, at *3 (W.D. Mo. April 23, 2010) (deference given to plaintiff's choice of forum, where some operative events took place, although some also occurred in another district).

The Court finds that the presence of only three of fifteen defendants in the Southern District of New York does not weigh in favor of transfer. Instead, the Court finds that the presence of the majority of defendants in this District, the likelihood of other relevant evidence's presence in this District, and the occurrence of operative facts in this District weigh in favor of venue in the Western District of Missouri. Therefore, the Court finds that the "convenience of the parties and witnesses" factors do not weigh in favor of transfer. It does not appear that the Southern District of New York would be a more convenient venue.

## C. Interest of Justice

Defendants contend that the "interest of justice" factors strongly weigh in favor of transfer. The Court disagrees.

### 1. Plaintiff's Choice of Forum

Defendants contend that while generally a plaintiff's choice of forum is entitled to considerable deference, plaintiff's choice of forum here should be given no or minimal deference. First, plaintiff does not reside in Missouri and is instead a resident of California. Ahlstrom v. Clarent Corp., No. Civ. 02-780RHKSRN, 2002 WL 31856386, at *4 (D. Minn. Dec. 19, 2002) (non-resident plaintiff's choice of forum afforded less deference). Second, plaintiff is asserting a class action and a derivative action against defendants. Guenther v. Cooper Life Scis., Inc., No. 4-88-503, 1988 WL 131340, at *4 (D. Minn. Dec. 5, 1988) ("Because a class or derivative action potentially involves a vast number of plaintiffs, those few plaintiffs who seek to represent the body cannot be accorded

special attention, particularly in their choice of forum.") (citation omitted). Third, the Western District of Missouri was plaintiff's second choice of a forum; plaintiff filed the action here after defendants challenged venue in the Eastern District of California.

Plaintiff contends that this is his first choice of a forum with respect to this litigation because he voluntarily dismissed his action in the Eastern District of California. Plaintiff further contends that where plaintiff's choice of forum coincides with the location of the nominal defendant, on whose behalf plaintiff sues, and the relevant documents and witnesses, plaintiff's choice of forum should be respected.

The Court agrees that plaintiff's choice of forum is entitled to less deference because he is not a Missouri resident and because he is bringing a class and derivative action. This does not mean that defendants' choice of forum will be granted more deference. Instead, although plaintiff's choice of forum will be given less deference, it will be given *some* deference, given the fact that the majority of defendants are located in this District and operative facts occurred in this District. This is not a case where defendants have no contact with plaintiff's chosen forum. See Biometics, LLC v. New Womyn, Inc., 112 F. Supp. 2d 869, 877 (E.D. Mo. 2000) (plaintiff's choice of forum given little weight if defendant has little contact with it and none of defendant's activity occurred there).

### 2. Related Case in the Southern District of New York

When defendants initially filed their motion to transfer venue, the Seidl litigation was pending in the Southern District of New York. As mentioned previously, the Seidl litigation was brought by plaintiff's counsel and involved similar legal theories and facts as this case, and also involved eleven of the fifteen defendants in this case. However, the Seidl litigation is no longer pending in the Southern District of New York. Nonetheless, defendants maintain that transfer is still

warranted to avoid inconsistent results, to promote efficiency, and to allow the possibility of any appeal in this case to be consolidated with appeal in the Seidl litigation.

While the Court agrees with defendants that the presence of related litigation heavily favors transfer in order to avoid duplicative litigation and avoid inconsistent results, see Ahlstrom, 2002 WL 31856386, at *6, this consideration is not valid because the Seidl litigation, even if sufficiently related to this litigation, is no longer pending in the Southern District of New York. The Court does not find that previously pending related litigation, nor the possibility of appeal, warrants transfer in this instance.

### 3. Judicial Economy

The Court finds that transfer of this case to the Southern District of New York would not have an effect of preserving judicial resources, especially given that there is no longer related litigation in the Southern District of New York and that the majority of defendants are located in this District.

### 4. Forum Shopping

Defendants contend that plaintiff's counsel's actions of filing nearly identical litigation around the country show forum shopping, a factor that the Court should consider. Defendants point out that the Seidl litigation was first filed in the Northern District of California, then refiled in the Southern District of New York after the first court *sua sponte* questioned venue. Defendants also point out that plaintiff first filed this action in the Eastern District of California, then refiled here after venue was questioned. Defendants point out that in between those two actions, plaintiff's counsel filed two other similar actions in the Southern District of New York, and after a disfavorable decision, filed another similar action in the Central District of California.

-9-

Plaintiff's counsel contends that it has not been forum shopping and there has been no impropriety in the filing of its actions in California, New York, or Missouri. It contends that it filed the McBrearty litigation in the Southern District of New York and venue was not objected to; that it filed the Wodka litigation in the Central District of California and venue was not objected to; that it filed the Seidl litigation first in the Northern District of California and then after venue was questioned, in the Southern District of New York because the plaintiff was a resident of New York; and that plaintiff filed the present action in the Eastern District of California because plaintiff is a resident of California and then refiled it here because most defendants are located here.

Although the Court agrees that this sequence of events by plaintiff's counsel could give the perception of forum shopping, it does not warrant transfer to the Southern District of New York.

Plaintiff also accuses defendants of forum shopping. Plaintiff contends that because this case involves an important legal issue regarding proximate causation under RICO that has not been decided by the Eighth Circuit but has been established by the Second Circuit (which includes the Southern District of New York), defendants are trying to avoid a determination of the issue by the Eighth Circuit and instead seek to transfer where they will receive a favorable decision. Defendants contend that they are not avoiding the Eighth Circuit because the law is the same in the Eighth and Second Circuits, and further, their motivation in transfer is to consolidate related litigation. Without determining this legal issue, the Court finds that these circumstances do not suggest defendants are forum shopping.

### 5. Familiarity with the Law

Defendants contend that because Judge Cote in the Southern District of New York has considered the same legal issues raised in plaintiff's Complaint during the Seidl litigation, that

District is already familiar with the law to be applied in this case, and that favors transfer. While the Court agrees that relative familiarity with the law to be applied is a relevant factor to consider when evaluating whether venue will promote the interests of justice, the Court finds that it can apply RICO law as fairly and capably as the Southern District of New York. DataCard Corp. v. Softek, Inc., 645 F. Supp. 2d 722, 733-34 (D. Minn. 2007) (denying transfer to the District of Puerto Rico in part because the court could fairly apply the law of Puerto Rico if necessary).

The parties dispute which state law applies to plaintiff's common law claims – Missouri or Maryland. Plaintiff contends that its common law claims will be governed by Missouri law; defendants contend they will be governed by Maryland law. Without determining which state's law applies to plaintiff's common law claims, the Court finds that either way the Southern District of New York is not more capable of determining these claims. If Missouri law applied, this Court would be more capable than the Southern District of New York in applying Missouri law; if Maryland law applied, this Court would be just as capable as the Southern District of New York in applying Maryland law.

### 6. Familiarity with Plaintiff's Counsel

Defendants also contend that because the Southern District of New York has handled three separate but similar lawsuits by plaintiff's counsel, Judge Cote is familiar with the factual and procedural positions plaintiff's counsel has taken in these cases. However, familiarity with plaintiff's counsel is not familiarity with plaintiff or the circumstances of this case. Purported familiarity with plaintiff's counsel does not weigh in favor of transfer in this case.

### 7. Ease of Enforcing Judgment

Plaintiff contends that should he prevail in this litigation, his ability to enforce judgment

-11-

would be easier in this District, where American Century's nerve center and headquarters are located. The Court agrees with defendants that this factor is entitled to minimal weight at most. See Sparks v. Goalie Entm't, Inc., No. 06-cv-00602-JEG, 2007 WL 962946, at *6 (S.D. Iowa March 30, 2007) ("ability to enforce a judgment in a sister state is a minimal concern, unlike enforcing a judgment in a foreign country").

Ultimately, the Court finds that the "interests of justice" considerations do not weigh in favor of transfer.

### D. Circumstances of Case Do Not Favor Transfer

After carefully analyzing and considering the factors enumerated under section 1404(a) and the circumstances of this case, the Court finds that defendants have not shown that the balance of the factors strongly favor transfer to the Southern District of New York. Graff, 33 F. Supp. 2d at 1121 ("Transfer should . . . be denied if the factors are evenly balanced or weigh only slightly in favor of transfer.").

Even giving plaintiff's choice of forum little deference, the Court finds that the circumstances of this case do not warrant transfer, as the majority of defendants are located in this District, some of the operative facts underlying this litigation occurred in this District, and the Court can capably apply RICO and state law to plaintiff's claims. Even any perception of forum shopping by plaintiff's counsel is insufficient to warrant transfer. Although venue may be proper in *either* the Southern District of New York or the Western District of Missouri, the Court is convinced that under the circumstances of this case, venue is not *more* convenient in the Southern District of New York, but if anything is just as or less convenient as venue here in the Western District of Missouri. Advanced Logistics, 2009 WL 1684428, at *5 ("Section 1404(a) . . . provides for transfer to a *more* convenient

-12-

forum, not one that is equally convenient (or inconvenient) to the forum originally selected.").

IV. Conclusion

Accordingly, based on the foregoing discussion, it is hereby

ORDERED that defendants' Motion to Transfer Venue (Doc. #15) is denied.

                                        /s/ Scott O. Wright
                                        SCOTT O. WRIGHT
                                        Senior United States District Judge

DATED: February 18, 2011